**FILED**

DEC 1 8 2012

THOMAS G BRUTON
CLERK, U S DISTRICT COURT

John Doe No. 3

Pro Se

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Malibu Media, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 12 C 8903 |
| v. | ) |
| | ) U.S District Court Judge |
| | ) Ruben Castillo |
| John Does No. 1-6, | ) |
| | ) |
| Defendant, | ) |

## MOTION TO QUASH SUBPOENA SERVED UPON THE LEGAL RESPONSE CENTER, COMCAST

COMES NOW John Doe No. 3 (DOE No. 3) and states as follows:

1. Plaintiff Malibu Media, LLC is a copyright troll, seeking through subpoena the identity of DOE No. 3 so that it can harass Doe No. 3 for a "nuisance-value" settlement; Plaintiff has not filed a valid complaint. Judge Otis D. Wright, II, in the Central District of California, concluded in a near-identical suit brought by Plaintiff, that Plaintiff is effectively using the federal courts to essentially engage in an "extortion scheme." Order of June 27, 2012, *Malibu Media LLC, v. DOES 1-10*, No. 2:12-cv-3623 ODW (PJWx) (Central District of California) (Wright, J.) (attached hereto as **Exhibit A**). This Court should follow the rationale of Judge Wright's opinion, and quash the subpoena as to DOE Nos. 2-6, so as not to permit Plaintiff improper and unnecessary discovery into DOE No. 3's identity. As Judge Wright noted,

12 C 8903

Plaintiff's invalid "extortion scheme" Complaint (DATE), under which it seeks from the Court pre-filing discovery, is premised on a violation of the Federal Rules of Civil Procedure. This intentional violation, discussed in Paragraphs __, is essential to Plaintiff's "extortion scheme," because it lowers the cost for Plaintiff to harass individuals like DOE No. 3 into humiliation-based nuisance-value settlements. This Court should reject Plaintiff's attempt to circumvent the Federal Rules of Civil Procedure for profit, and quash the subpoena as to DOE Nos. 2-6.

2. DOE No. 3 is a resident of Illinois. Third party Comcast is a Chicago-based internet service provider (ISP) that provides internet service to its customers, including DOE No. 3. Plaintiff, Malibu Media, is a producer of adult entertainment films and content. Plaintiff served a subpoena on Legal Response Center, Comcast, to compel the disclosure of documents to identify the name, address, telephone number, and e-mail address of DOE No. 3, so DOE No. 3 can be named as a defendant in Plaintiff's copyright infringement action. Plaintiff filed suit in the Northern District of Illinois (C.A. No. 1:12-CV-08903) against six unnamed DOE defendants, who are identified in its Complaint only by internet protocol (IP) addresses. Plaintiff alleges that these DOE defendants have obtained an adult video in violation of Plaintiff's copyrights.

3. Pursuant to Fed. R. Civ. P. 45(c)(3)(A), DOE 3 files this Motion to Quash Subpoena served upon the Comcast Legal Response Center. The court should quash as to DOE No.3 because defendants are improperly joined. Second, __. Third, __.

4. **The Court should quash the subpoena as to DOE No. 3 because Plaintiff's Complaint is improper as to DOE NOS. 2-6 under joinder rules.** Joinder is improper because the claims against the defendants do not arise out of the same transaction, occurrence, or series of transactions and occurrences. Notwithstanding that joinder is permissive under Rule 20(a)(2), the claims should be severed under Rule 21. *Accord Coleman v. Quaker Oats Co.,*

12 C 8903

232 F.3d 1271, 1296 (9th Cir. 2000). Although joinder is "strongly encouraged" and the rules are construed generously towards "entertaining the broadest possible scope of action consistent with fairness of the parties," *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966), district courts have equally broad discretion to sever parties based on misjoinder. *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003). Downloading a work as part of a swarm does not constitute 'acting in concert' with one another, particularly when the transactions happen over a long period.'"; *Patrick Collins, Inc. v. Doe 1*, No. 12-cv-1154 (ADS)(GRB), 2012 WL 5879120, at *8 (E.D.N.Y. Nov. 20, 2012).

5. Plaintiff should not be able to group all DOES under a swarm theory of copyright infringement. The individual defendants could have likely chosen, at different times, to download a torrent file and allow the BitTorrent client to reconstruct the film. It is plausible that these peers never considered their interaction with others in the swarm, and the Complaint does not allege that the peers deliberately acted in concert with one another by exchanging data. *See Hard Drive Prods. 188*, 809 F. Supp. 2d at 1163 (rejecting the swarm theory of joinder under Rule 20(a)(2) because "there is no evidence to suggest that each of the addresses' acted in concert' with all of the others.").

6. The Court should further not permit the plaintiff to bend the Federal Rules of Civil Procedure in order to assist plaintiff's extortion scheme because this particular plaintiff is only concerned with the litigation economy to be gained from trying the different cases together. *Bubble Gum Prods.*, 2012 WL 2953309, at *4. "[T]he variety of individualized defenses that can be raised creates judicial inefficiency when numerous defendants are joined." Litigating

3

12 C 8903

these cases as a single action accomplishes the goal of not having to pay a separate filing fee for each action brought." *Digital Sins 245*, 2012 WL 1744838, at *3. By filing a single lawsuit against six defendants, Malibu has paid only $350 in filing fees, rather than the $2,100 it would have paid if the lawsuits had been brought separately.

7. Plaintiff filed an ex parte application for "early discovery" (before a Rule 26(f) conference) so that it could serve subpoenas on ISPs, such as Comcast, to determine the internet subscriber names, addresses, and e-mail addresses associated with the IP addresses listed in its Complaint. Judge Ruben Castillo, of the Northern District of Illinois, entered the order attached hereto permitting plaintiffs to proceed with expedited discovery in order to issue subpoenas on ISPs. [4] This Motion to Quash is timely filed as Comcast notified DOE No. 3 of the forthcoming subpoena on December 5, 2012.

8. Additionally, the Malibu Media complaint and ex parte request for expedited discovery are part of a wave of suits in which copyright infringement plaintiffs seek to "tag" a defendant based solely on an IP address. An IP address however, is not equivalent to a person or a person's tangible property. In a case with very similar facts, in which an adult entertainment content producer sought expedited discovery to learn the identity of persons associated with IP addresses, United States District Judge Harold Baker of the Central District of Illinois denied a motion for expedited discovery and reconsideration, holding that, "IP subscribers are not necessarily copyright infringers...The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment." Order of Apr. 29, 2011, *VPR Internationale v. DOES 1-1017*, No. 2:11-cv-02068 (Central District of Illinois) (Judge Harold A. Baker) [hereinafter VPR Internationale Order], attached hereto as **Exhibit B**. Judge Baker illustrates the point that there may be no

4

12 C 8903

correlation between the individual subscriber, the IP address, and the infringing activity. Id. Judge Baker detailed the types of risk associated without the false identification of ISPs based on internet protocol addresses when he described a raid by federal agents on a home allegedly linked to downloaded child pornography. The identity and location of the subscriber were provided by the ISP (in the same fashion as Plaintiff seeks to extract such information from Comcast.) After the raid revealed no pornography on the family computers, federal agents eventually learned they raided the wrong home. The downloads of illegal material were traced to a neighbor who used multiple IP subscribers' Wi-Fi connections. Id. This is the identical risk of false identification and false accusations through disclosure of identities of internet subscribers which is presented in this matter. Given the nature of the allegations and the material in question, DOE No. 3 would suffer a serious reputational injury should this Court force Comcast to turn over the requested information.

9. **The Court should also quash the subpoena as to DOE No. 3 because it presents an undue burden to DOE No. 3 under FED. R. CIV. P. 45(c)(3)(A)(iv).** DOE No. 3 resides in a three story residential structure in a heavily populated area. DOE No.3 could have a roommate or frequent guests, which means he/she is likely not the only person who has been living in, or visiting, the apartment, and using the specified internet service provider. The likelihood that another individual, other than DOE No. 3, infringed Plaintiff's copyrights is too great to support any correlation between DOE No. 3 and the alleged violation that Plaintiff seeks to prove. Here, the risk of reputational injury to a young person from public exposure and association with the Malibu Media allegations—even if later disproven—is too great and presents an undue burden to DOE No. 3 under FED. R. CIV. P. 45(c)(3)(A)(iv).

12 C 8903

10.     If the mere act of having an internet address can link a subscriber to copyright infringement suits, internet subscribers such as DOE No. 3 will face untold reputational injury, harassment, and embarrassment. The reputational risk that Judge Baker found to be an undue burden is equally presented here: "[W]hether you're guilty or not, you look like a suspect." Id. at 3. Moreover, this case presents the same extortion risk that so concerned Judge Baker:

11.     "Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong? The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether VPR has competent evidence to prove its case." *Id.* Plaintiffs in these types of cases use discovery to extort settlements from anonymous defendants who wish to avoid the embarrassment of being publicly associated with this type of allegation. Id. Such abuse of the discovery process should not be allowed to continue.

12.     **The Court should also quash the subpoena as to DOE No. 3 because the subpoena seeks information that is not relevant given Plaintiff's inability to link DOE No. 3 to alleged infringing activity.** This subpoena should be quashed because the information sought is not relevant to Plaintiff's allegations. Implicit in the rule granting subpoena power is a requirement that the subpoena seeks relevant information. See *Syposs v. United States*, 181 F.R.D. 224, 226 (W.D.N.Y. 1998)("the reach of a subpoena issued pursuant to [FED. R. CIV. P. 45] is subject to the general relevancy standard applicable to discovery under [FED. R. CIV. P. 26(b)(1) ]."). The information linked to an IP address cannot give you the identity of the infringer. *VPR Internationale* Order, at 2. Because the infringer could have been anybody with a laptop passing within range of the router, the information sought by Plaintiff is not relevant to the allegations

6

12 C 8903

in any way. Id. Moreover, even if the information has some small amount of relevance to the claim—which it does not—discovery requests cannot be granted if the quantum of relevance is outweighed by the quantum of burden to the defendant. FED. R. CIV. P. 26(b)(2)(C)(iii). Plaintiff's request fails that balancing test. Given that DOE No. 3 was only one of many persons who could have used the IP address in question, the relevance is miniscule at best. As discussed above, the burden to DOE No. 3 is severe. The lack of relevance, when measured against the heavy burden of risking a significant reputational injury, reveals that this subpoena fails the FED. R. CIV. P 26 balancing test. Id. Plaintiff's request for information is an unjustified fishing expedition that will cause reputational injury, prejudice, and undue burden to DOE No. 3 if allowed to proceed. Good cause exists to quash the subpoena served on Comcast to compel the disclosure of the name, address, telephone number and e-mail address of DOE No. 3.

13. DOE No. 3 has standing to move to quash the subpoena to protect reputational interests. FED. R. CIV.P. 45(c)(3)(B) allows a person affected by, but not subject to, a subpoena to move to quash the subpoena. According to the docket sheet for Plaintiff's suit, no defendant has been identified, served with process, or answered. The Northern District of Illinois thus lacks personal jurisdiction over any of the DOEs at this point. Until at least one person is served, the court lacks personal jurisdiction over anyone, so the Northern District of Illinois also lacks personal jurisdiction over DOE No. 3 at this time.

14. FOR THESE REASONS, DOE No. 3 requests that this Court quash the subpoena served on Comcast as to Doe No. 3 in this likely matter of extortion by plaintiff.

DATED: December 18, 2012                        Respectfully submitted,

                                                             By: /s/ John Doe No. 3,

12 C 8903

Pro Se

## CERTIFICATE OF SERVICE

This is to certify that a true, correct and complete copy of the foregoing Motion to Quash Subpoena was served vie First Class Certified Mail, addressed to Plaintiff's counsel of record as follows:

> Mary K. Shulz
> 1144 E. State Street, Suite A260
> Geneva, IL 60134
> Email: SchulzLaw@me.com

Dated: December 18, 2012.

/s/ *John Doe No. 3*
John Doe No. 3

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| MALIBU MEDIA, LLC, | Case No. 2:12-cv-3623-ODW(PJWx) |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| JOHN DOES 1 through 10, | |
| Defendants. | |

This case concerns the alleged BitTorrent transfer of the pornographic film "Blonde Ambition." Plaintiff Malibu Media, LLC filed suit for copyright infringement against ten Doe Defendants. Now, Malibu seeks leave to serve third party subpoenas prior to the Rule 26(f) conference. (ECF No. 5.) Generally, parties may not seek discovery from any source prior to the Rule 26(f) conference. Fed. R. Civ. P. 26(d). But exceptions are allowed by court order. *Id.* Malibu seeks an exception, contending that the anonymity afforded by the Internet cloaks all information about the infringers, save their IP addresses. (Mot. 2.) Without subpoenaing these infringers' internet service providers ("ISP"), Malibu asserts there is no other way to reveal the infringers' identities. (Mot. 5.) For the reasons discussed below, the Court **GRANTS IN PART** Malibu's motion.[1]

---

[1] Having carefully considered the papers filed in support of this motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## I. BACKGROUND

The BitTorrent protocol allows users to transfer files over the Internet. Like other file-sharing technology, BitTorrent may be used to legally upload or download computer files—and it may also be used to pirate copyrighted software, movies, music, and anything else that may exist on computer-readable media. But unlike other file-sharing technology, where users connect to each other or to a central repository to transfer files, files shared via BitTorrent exist in a swarm, with pieces of the whole file distributed among the users.

The following example illustrates this technology:

- The original user posts a 100MB movie file on a BitTorrent tracker website. The file exists only on that user's computer—the file is not uploaded to the tracker website;
- Other users discover this movie file through the tracker website and log onto the BitTorrent swarm to download this file;
- On the original user's computer, BitTorrent software divides the 100MB movie file into 10,000 pieces, each representing a 10kB chunk;
- As downloaders log onto the BitTorrent swarm, these 10kB pieces are randomly distributed—the first piece to the first downloader, the fifth piece to the second downloader, etc.;
- After the initial pieces are transferred, additional pieces are randomly transferred to the downloaders—the first downloader may now have the first and 500th pieces; the second downloader may now have the second and 900th pieces, etc.;
- Once sufficient pieces have been distributed to downloaders in the swarm, the BitTorrent protocol will automatically transfer pieces between downloaders—the first downloader may receive the 900th piece from the second downloader, the second downloader may receive the first piece from the first downloader, etc.;

1  • The BitTorrent swarm becomes larger as more users log on and more pieces are
2    distributed;
3  • Once every piece of the original file has been uploaded to the collective swarm,
4    the original uploader may log off—the entire movie exists in pieces in the
5    swarm;
6  o When a downloader has received all 10,000 pieces of the 100MB movie file, his
7    BitTorrent software reassembles the pieces to reconstruct the original file on his
8    computer;
9  • These completed downloaders may then log off, or may remain online to
10   continue seeding the pieces of the file to other downloaders.

There are several nuances about the BitTorrent protocol. First, every participant may upload and download pieces of the file. Second, these individual pieces are useless until a user has all of them; the user cannot reassemble the original file with even 99% of the pieces. Third, a user may log on and download just one piece (e.g., a 10kb piece) of the file and then log off, waiting to download the other pieces later or discarding the downloaded piece. Fourth, a user may restrict his BitTorrent software to only download pieces, and not upload.

When Malibu discovered that its film was being pirated via BitTorrent, it hired IPP, Limited to investigate. (Fieser Decl. ¶ 11.) IPP logged onto the BitTorrent swarm for the film and downloaded various pieces of the movie file from the Defendants. (*Id.* ¶ 17–19.) These pieces, when reassembled with other pieces, result in the copyrighted film. (*Id.* ¶ 20–21.) By this investigation, IPP discovered the IP addresses of the 10 Doe Defendants, along with the date and time of the alleged infringing activity. (*Id.* ¶ 22.)

///
///
///
///

## II. DISCUSSION

Malibu asks the Court to subpoena the ISPs owning these 10 IP addresses, to uncover their subscriber logs to identify the names and addresses of the 10 Doe Defendants.

### A. Third party subpoenas

In lawsuits against Doe defendants, the plaintiff should ordinarily be allowed discovery to uncover their identities. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). But discovery may be denied if it is (1) clear that discovery would not uncover the identities, or (2) that the complaint would be dismissed on other grounds. *Id.*

Under the first condition, Malibu represents that these ISP subscriber logs will lead to the individual infringers. (Mot. 5.) Assuming that is true, the subscriber may not be the actual infringer. For instance, a person may be the subscriber, but his roommate is the actual infringer. And the subscriber may have his home network configured to allow visitors, including strangers, to access the Internet—and use BitTorrent. Further, the subscriber may be a business (e.g., a coffee shop), and Internet access may be open to all employees and customers. In some situations, the identity of the subscriber may yield the identity of the infringer; in others, the infringer may never be known.

Although the Court is inclined to allow Malibu to conduct this discovery, the potential for abuse is very high. The infringed work is a pornographic film. To save himself from embarrassment, even if he is not the infringer, the subscriber will very likely pay the settlement price. And if the subscriber is a business, it will likely pay the settlement to save itself from the hassle and cost of complying with discovery— even though one of its customers or employees is the actual infringer.

///
///
///
///

As for the second *Gillespie* condition, Malibu has not shown sufficient facts to show that the complaint should not be dismissed. Malibu avers that the 10 Doe Defendants have each connected to the IPP server to "transmit a full copy, or a portion thereof" of "Blonde Ambition." (Compl. ¶ 40.) But Malibu does not show which Doe Defendants transmitted a full copy, and which transmitted just one piece of the file. As noted above, individual BitTorrent file pieces are worthless—by themselves they can never be reconstructed into the original file. Nor do the individual file pieces resemble a partial movie clip: if a 10-minute movie file was split into 60 pieces by BitTorrent, the resulting pieces are not playable 10-second clips of the movie. If it is the case that a Doe Defendant logged onto the BitTorrent swarm, downloaded and then uploaded a single piece to the IPP server, and then logged off, all he has done is transmit an unusable fragment of the copyrighted work. Without the remaining pieces, this Doe Defendant cannot do anything with this scrap of data.

At this stage, the Court declines to opine whether transmitting pieces of a copyrighted work using BitTorrent, without transmitting all of the pieces, constitutes copyright infringement. But the Court notes that Malibu's case is weak if all it can prove is that the Doe Defendants transmitted only part of all the BitTorrent pieces of the copyrighted work.

In sum, the Court finds that privacy concerns are balanced with the need for discovery by allowing Malibu to subpoena the ISP for John Doe 1. Though Malibu now has the keys to discovery, the Court warns Malibu that any abuses will be severely punished.

**B.    Defendants are improperly joined**

Malibu offers no evidence justifying the joinder of the Doe Defendants. According to Malibu, these 10 Doe Defendants connected to the IPP server on different dates and times, and from different locations. (Compl. Ex. A.) The loose proximity of the alleged infringments (March 5, 2012–April 12, 2012) does not show that these Defendants participated in the same swarm. As discussed above, a

downloader may log off at any time, including before receiving all the pieces of the copyrighted work. Without evidence that these Does acted in concert, joinder is improper—the Doe Defendants should be severed and dismissed under Federal Rule of Civil Procedure 21.

### C.     The economics of pornographic copyright lawsuits

The Court is familiar with lawsuits like this one. *AF Holdings LLC v. Does 1-1058*, No. 1:12-cv-48(BAH) (D.D.C. filed January 11, 2012); *Discount Video Center, Inc. v. Does 1-5041*, No. C11-2694CW(PSG) (N.D. Cal. filed June 3, 2011); *K-Beech, Inc. v. John Does 1-85*, No. 3:11cv469-JAG (E.D. Va. filed July 21, 2011). These lawsuits run a common theme: plaintiff owns a copyright to a pornographic movie; plaintiff sues numerous John Does in a single action for using BitTorrent to pirate the movie; plaintiff subpoenas the ISPs to obtain the identities of these Does; if successful, plaintiff will send out demand letters to the Does; because of embarrassment, many Does will send back a nuisance-value check to the plaintiff. The cost to the plaintiff: a single filing fee, a bit of discovery, and stamps. The rewards: potentially hundreds of thousands of dollars. Rarely do these cases reach the merits.

The federal courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial. By requiring Malibu to file separate lawsuits for each of the Doe Defendants, Malibu will have to expend additional resources to obtain a nuisance-value settlement—making this type of litigation less profitable. If Malibu desires to vindicate its copyright rights, it must do it the old-fashioned way and earn it.

/ / /

/ / /

/ / /

/ / /

### III. CONCLUSION

For the reasons discussed above, Malibu's Motion is **GRANTED IN PART**. Malibu may now subpoena Cox Communications for the identity of John Doe 1. The other Doe Defendants are hereby severed from this case. If Malibu chooses to refile against John Does 2-10, it must also submit a notice of related case.

**IT IS SO ORDERED.**

June 27, 2012

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

E-FILED
Friday, 29 April, 2011  09:02:53 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| VPR INTERNATIONALE, | ) | |
| | ) | |
| Plaintiff, | ) | 11-2068 |
| | ) | |
| v. | ) | |
| | ) | |
| DOES 1 - 1017, individually and as representatives of a class, | ) ) | |
| | ) | |
| Defendants. | ) | |

ORDER

The plaintiff, VPR Internationale, is a Montreal, Quebec-based producer of adult entertainment content. VPR has filed this complaint against 1,017 Doe defendants identified only by Internet Protocol ("IP") address. VPR alleges that these defendants have distributed adult videos in violation of VPR's copyrights. To determine the identity of the 1,017 alleged copyright infringers, VPR filed an *ex parte* motion for expedited discovery so that it could immediately serve subpoenas on Internet service providers ("ISPs") to determine the subscriber and location associated with each IP address. The court denied the motion for expedited discovery [9]. VPR filed an *ex parte* motion for reconsideration, which was denied on March 22, 2011, by text order.

VPR has now filed a motion to certify for interlocutory review the court's denial of its motion for expedited discovery. VPR seeks certification for one controlling question of law:

> Defendants' identifies are unknown to the Plaintiff. Instead, each Defendant is associated with an Internet Protocol (IP) address. Internet Service Providers (ISPs) know identity and contact information associated with each IP address. Is the Plaintiff to entitled to discover this information by serving ISPs with subpoenas *duces tecum* under Fed. R. Civ. P. 45?

Fed. R. Civ. P. 26(d)(1) prohibits a party from "seek[ing] discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." In this case, VPR may seek expedited discovery only by court order.

Arguing in favor of certification, VPR directs the court's attention to its motion for reconsideration. In its memorandum, VPR concedes that the relief sought falls outside traditional adversarial procedure, and states that there is no legal basis to name the ISP providers as defendants. VPR compares the Doe defendants' IP addresses to "records of *who* rented *which* car at a busy car rental agency, in that IP addresses are like cars "leased by subscribers. If a

1

plaintiff was injured by a rental car, the plaintiff can discover the information on who leased the car from the agency by specifying the license plate of the offending vehicle and the date and time when the injury occurred. Without access to the agency's records, all the plaintiff has is the identity of the rental agency, but not who was driving the rental car." The comparison is not apt. The rental agency owns the car and is a potential defendant, so the adversarial process would yield the driver's information. And such information is not necessarily confidential; accident reports and police records may also identify the driver.

In this case, not a single one of the plaintiff's 1,017 potential adversaries has been identified. There is no adversarial process yet. Moreover, VPR ignores the fact that IP subscribers are not necessarily copyright infringers. Carolyn Thompson writes in an MSNBC article of a raid by federal agents on a home that was linked to downloaded child pornography. The identity and location of the subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid. Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material. Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections (including a secure connection from the State University of New York). *See* Carolyn Thompson, *Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks* (April 25, 2011), http://www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/

The list of IP addresses attached to VPR's complaint suggests, in at least some instances, a similar disconnect between IP subscriber and copyright infringer. The ISPs include a number of universities, such as Carnegie Mellon, Columbia, and the University of Minnesota, as well as corporations and utility companies. Where an IP address might actually identify an individual subscriber and address the correlation is still far from perfect, as illustrated in the MSNBC article. The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment.

VPR argues that, if served with a subpoena, the ISPs are required by law to notify each targeted subscriber and the Does may then move the court to quash the subpoenas. The potential filing of a motion to quash is no reason to abandon the adversarial process. As VPR points out, *ex parte* motions for expedited discovery have been granted in similar cases in other districts; among the thousands of Does in those cases, relatively few motions to quash have been filed. In at least one case, counsel[1] has sought leave to amend the complaint to add more Doe defendants. *See Lightspeed Media Corp. v. Does 1 - 100*, Case No. 1:10-cv-05604, d/e 16 (N.D. Ill.) (seeking leave to add Does 101 - 1000 as defendants). In *Hard Drive Productions, Inc. v. Does 1 - 1000*, counsel sought leave to dismiss more than 100 Doe defendants, stating that some of the Does had "reached a mutually satisfactory resolution of their differences" with the plaintiff. *Hard Drive*,

---

[1] VPR is represented by John Steele, Esq. Steele represents other adult entertainment producers in cases now (or recently) pending in the Northern and Southern Districts of Illinois.

2

Case No. 1:10-cv-05606, d/e 33 (N.D. Ill.).[2] Orin Kerr, a professor at George Washington University Law School, noted that whether you're guilty or not, "you look like a suspect."[3] Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong? The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether VPR has competent evidence to prove its case.

In its order denying the motion for expedited discovery, the court noted that until at least one person is served, the court lacks personal jurisdiction over anyone. The court has no jurisdiction over any of the Does at this time; the imprimatur of this court will not be used to advance a "fishing expedition by means of a perversion of the purpose and intent" of class actions. Order, d/e 9.

The motion to certify for interlocutory review [14] is denied.

Entered this 29th day of April, 2011.

\s\Harold. A. Baker

HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE

---

[2] In *Lightspeed*, only one defendant has been named and his case severed; the ISP subpoenas have been quashed, the other Does are dismissed, and Steele has been ordered to notify the Does that they are no longer potential defendants in the case. *See* Case No. 1:10-cv-05604, d/e 57 (N.D. Ill.).

[3] MSNBC article, p. 2.