# UNITED STATES DISTRICT COURT
## NORTHERN DIVISION OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 08903 |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| JOHN DOES 1-6, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Malibu Media, LLC ("Malibu") brought suit in this Court against six unnamed

individuals ("Doe Defendants") alleging direct and contributory copyright infringement in

violation of the United States Copyright Act of 1976, 17 U.S.C. § 101 *et. seq.* (R. 1, Compl. ¶¶

48-64.) On November 8, 2012, the Court dismissed the complaint without prejudice to the filing

of a proper amended complaint that names actual defendants. (R. 4, Min. Entry.) The Court

granted Malibu leave to issue subpoenas to ascertain Doe Defendants' identities. (*Id.*) Presently

before the Court are three Putative Defendants'[1] motions to quash, motions to sever, and motions

for a protective order to proceed anonymously. (R. 6, Doe 3's Mot.; R. 10, Doe 5's Mot.; R. 14,

Doe 2's Mot.) For the reasons stated below, the motions to quash and sever are denied, and the

motions for a protective order to proceed anonymously are granted.

---

[1] "Putative Defendants" refers to Does 2, 3, and 5—the persons allegedly associated with the internet protocol ("IP") addresses in Malibu's complaint and who have presented motions to this Court, whereas "Doe Defendants" refers to all persons allegedly associated with the IP addresses in Malibu's complaint. An IP address is a number that corresponds to a particular internet connection, much as a telephone number corresponds to a particular telephone line. (R. 1, Compl. ¶ 9.)

## RELEVANT FACTS

Malibu is a limited liability company ("LLC") organized under the laws of the State of California. (R. 1, Compl. ¶ 7.) Malibu alleges that it owns copyrights to sixteen adult films (the "Copyrighted Works").[2] (*Id.* ¶ 12; R. 1-2, Ex. B, Copyright Registrations at 1-6.) Malibu distributed the Copyrighted Works on a website that was allegedly copied and then distributed by Doe Defendants. (R. 1, Compl. ¶¶ 2, 14, 23.) Malibu avers that Doe Defendants used computer software known as BitTorrent to illegally copy and distribute the films. (*Id.* ¶¶ 17-47.)

Before proceeding further, the Court briefly explains BitTorrent. BitTorrent is a computer program that allows people to share files over the Internet. (*Id.* ¶ 17.) BitTorrent's defining feature is that it allows files to be transferred between multiple computers simultaneously. (*Id.* ¶ 18.) Unlike previous file-sharing programs, which required users to download a file from a single "source computer," BitTorrent allows users to download many different pieces of a file from many different computers. (*Id.*) The process begins when an initial user (known as an "initial seeder") installs BitTorrent on his computer and uses BitTorrent to create a torrent descriptor file ("Torrent file"). (*Id.* ¶¶ 20-22.) To create the Torrent file, BitTorrent takes the target computer file (known as an "initial seed")—here, that target computer file was the website containing the Copyrighted Works—and divides it into several smaller pieces. (*Id.* ¶ 23.) BitTorrent assigns each of the pieces a "hash," a unique alphanumeric identifier that is like an electronic fingerprint, and records the hash identifiers in the Torrent file.

---

[2] In its complaint, Malibu alleges that it owns sixteen copyrighted films; however, it has only provided copyright registrations for six films. (*See* R. 1, Compl. ¶¶ 12-15; R. 1-2, Ex. B, Copyright Registrations at 1-6.) Similarly, although Malibu alleges that Doe Defendants copied and distributed a website containing sixteen films, its investigation records show evidence of only seven films. (*See* R. 1-3, Ex. C, Alleged Infringement Chart at 1-3.) Nonetheless, for purposes of this memorandum opinion and order, the Court assumes that the Copyrighted Works include sixteen films.

(*Id.* ¶¶ 24-25.) In addition to the hash identifiers, the Torrent file contains the URL of a "tracker,"[3] information about the computer files that have been broken down into pieces, the length of the pieces used, and the hash identifiers for each piece. (*Id.* ¶ 26.) The tracker directs one user's computer to another user's computer that already has particular pieces of the computer file, and facilitates the exchange of data among the computers. (*Id.* ¶ 28.) Once a Torrent file has been created, the user uploads it to a Torrent website. (*Id.* ¶ 32.) A Torrent website is a website that indexes Torrent files that are currently being made available for copying and distribution by persons using BitTorrent. (*Id.* ¶ 30.)

As soon as an initial seeder creates and uploads a Torrent file onto a Torrent website, other BitTorrent users ("peers") may visit the Torrent website and download the computer file to which the Torrent file is linked—here, that computer file is alleged to be the website with the Copyrighted Works—from the original user's computer by using BitTorrent. (*Id.* ¶¶ 32-33.) Other users, however, cannot download the computer file unless they agree to simultaneously upload it. (*Id.* ¶ 34.) As soon as a user downloads a piece of the computer file, BitTorrent simultaneously makes that piece available to other users who want to download the computer file. (*Id.*) For example, imagine that A is a seeder and that she creates a Torrent file and uploads it onto a Torrent website. Afterward, another user, B, visits the Torrent website and downloads the computer file to which the Torrent file is linked from A. After B has downloaded the computer file, a third user, C, visits the Torrent website and decides to download the computer file. C does not download the entire computer file from A, but simultaneously downloads pieces of the computer file from A *and* B. After C downloads the computer file, subsequent users can visit the Torrent website and simultaneously download pieces of the computer file from A, B,

---

[3] A "tracker" is a computer or a set of computers that a Torrent file specifies and to which the Torrent file provides peers with the URL addresses. (R. 1, Compl. ¶ 27.)

*and* C, and so on. In this way, BitTorrent forces each downloader to also become an uploader. (*Id.*) BitTorrent users use the word "swarm" to describe the group of computers that download and upload the file.[4] (*Id.* ¶ 35.) Once a peer had downloaded the entire computer file, BitTorrent reassembles the pieces and the peer is able to view the movie. (*Id.* ¶ 38.)

Malibu hired IPP, Limited ("IPP") to identity people who used BitTorrent to "reproduce, distribute, display, or perform" Malibu's Copyrighted Works. (*Id.* ¶ 39.) IPP used software to detect the IP address of BitTorrent users who had copied and distributed the Copyrighted Works by isolating the transactions associated with the Copyrighted Works' unique hash number. (*Id.* ¶¶ 40-41.) IPP's research showed that someone using Doe Defendants' IP addresses had used BitTorrent to copy the Copyrighted Works. (*Id.* ¶¶ 41-44.)

Malibu alleges that each Doe Defendant installed the BitTorrent program onto his computer,[5] visited a Torrent website, and copied and distributed a computer file containing its Copyrighted Works. (*Id.* ¶¶ 19, 31-32.) Malibu alleges that Doe Defendants each participated in the same swarm and directly interacted with other members of the swarm by simultaneously downloading and uploading the file. (*Id.* ¶¶ 36, 41-45.)

## PROCEDURAL HISTORY

On November 7, 2012, Malibu filed a complaint against six unnamed individuals who allegedly used BitTorrent to copy and distribute Malibu's Copyrighted Works without its

---

[4] Although a user can choose to stop uploading after she has downloaded an entire file, the user must upload pieces of a file while the download is in progress. Sean B. Karunaratne, Note, *The Case Against Combating BitTorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits*, 111 Mich. L. Rev. 283, 289 (2012). Furthermore, BitTorrent encourages users to remain connected to the original swarm by linking swarm connection to download speed. *Id.* Users who remain connected to the swarm enjoy much faster download speeds than those who have disconnected. *Id.*

[5] Although the sexes of Doe Defendants are unknown, the Court will refer to them with masculine pronouns for simplicity's sake.

consent, thereby infringing its copyright. (R. 1, Compl. ¶¶ 48-64). Malibu alleged that Doe

Defendants' unauthorized reproduction of its films constituted direct and contributory copyright

infringement in violation of 17 U.S.C. §§ 106 and 501. (*Id.*) Malibu states that it has suffered

actual damages proximately caused by the alleged infringements, and it seeks to enjoin Doe

Defendants from continuing to infringe on its copyrights. (*Id.* ¶¶ 54, 64.) It also seeks an order

requiring Doe Defendants to delete and permanently remove the Torrent file relating to its

Copyrighted Works, a declaration that each Doe Defendant is jointly and severally liable for the

infringement of every other defendant, and the greater of statutory or actual damages, plus

attorneys' fees and costs. (*Id.*) On the same day that Malibu filed its complaint, it also filed

what it designated a "Notice of Filing Rule 7.1 Disclosure Statement." (R. 3, Not. at 1.)

At the time of the complaint's filing, each Doe Defendant was known only by his IP

address. (*Id.* ¶ 8; R. 21, Pl.'s Mot. Ext. Time at 1.) On November 8, 2012, the Court dismissed

the complaint without prejudice to the filing of a proper amended complaint that names actual

defendants.[6] (R. 4, Min. Entry.) The Court also granted Malibu leave to proceed with expedited

discovery and issue appropriate subpoenas to ascertain Doe Defendants' identities. (*Id.*) A

subpoena was issued to Comcast, Doe Defendants' internet service provider, ordering Comcast

to provide Malibu with Doe Defendants' names, addresses, and telephone numbers. (*See, e.g.,*

R. 10-2, Ex. A, Subpoena at 1-4.) Comcast then sent letters to Doe Defendants notifying them of

the subpoena. (R. 10-3, Ex. B, Comcast Letter at 1.) The letters informed Doe Defendants that

Comcast would provide their information to Malibu unless they or their attorneys filed a motion

---

[6] Malibu's original complaint remains operative for purposes of establishing the record and analysis for this memorandum opinion and order.

5

to quash or vacate the subpoena by January 8, 2013. (*Id.*) A somewhat lengthy exchange of motions involving the Putative Defendants followed.[7]

On December 18, 2012, Doe 3, proceeding *pro se*, filed a motion to quash.[8] (R. 6, Doe 3's Mot.) Doe 3 argues that the subpoena should be quashed for four reasons. First, Doe 3 argues that Doe Defendants were improperly joined because their alleged actions do not constitute a "transaction, occurrence, or series of transactions or occurrences" under Federal Rule of Civil Procedure 20(a)(2)(A). (*Id.* at 2-5.) Second, Doe 3 argues that the subpoena should be quashed because it presents an "undue burden" under Federal Rule of Civil Procedure 45(c)(3)(A)(iv). (*Id.* at 5-6.) Third, Doe 3 argues that the burden of the subpoena outweighs its relevance to Malibu's allegations in violation of Federal Rule of Civil Procedure 26(b)(2)(C)(iii). (*Id.* at 6-7). Finally, Doe 3 argues that the Court lacks personal jurisdiction over him and other Doe Defendants because none of them have been served with a complaint. (*Id.* at 7.) Malibu responded to the motion on January 2, 2013 and contests all of Doe 3's arguments. (R. 7, Pl.'s Resp. Doe 3.)

On January 8, 2013, Doe 5 moved to bar re-filing or amendment of the complaint or, in the alternative, to sever parties from the complaint, (R. 10, Doe 5's Mot. at 3-12); to quash the

---

[7] Does 1, 4 and 6 did not move to quash or vacate the subpoena, and Malibu has since learned their identities. (R. 21, Pl.'s Mot. Ext. Time at 1.) On January 23, 2013, the Court dismissed Doe 1 from the case after receiving notice that Doe 1 reached a settlement agreement with Malibu. (R. 17, Min. Order; R. 8, Malibu's Notice of Settlement.) Additionally, on March 7, 2013, Malibu filed a motion for an extension of time within which to serve all Defendants because it was not yet in possession of all Defendants' identities. (R. 21, Mot. at 1). The Court granted the extension on March 20, 2013, (R. 23, Min. Entry), and therefore, as of the date of this memorandum opinion and order, Does 4 and 6 have not yet been served with a summons and complaint.

[8] Doe 3 is proceeding *pro se*; therefore, the Court holds the arguments raised in his motion, however "inartfully pleaded," to a less stringent standard than that which a applies to the more formal filings usually drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (instructing that documents filed *pro se* are "to be liberally construed").

subpoena and for sanctions, (*id.* at 13-14); to join Doe 3's motion to quash, (*id.* at 15); and for a

protective order allowing him to proceed anonymously, (*id.* at 16). With the exception of his

requests for sanctions and to proceed anonymously, Doe 5's legal arguments are substantially

similar to Doe 3's. Also on January 8, 2013, Doe 2, acting *pro se*, made several motions. (R. 14,

Doe 2's Mot.) Doe 2 styles his motion as a "Motion to Dismiss and/or Sever Complaint Against

Defendant Doe #2 and Quash Subpoena Against Same." (*Id.* at 1.) In the main, the substance of

Doe 2's legal arguments is similar to Does 3 and 5's arguments.[9] (*Id.*) Because Doe 2 styles his

motion as a "motion to quash," the Court construes it as a motion to quash pursuant to Rule

45(c)(3). (R. 14, Doe 2's Mot. at 1.) In addition, Doe 2 argues that Malibu's films are not

copyrightable. (*Id.* at 7.)

On January 22, 2013, Malibu responded to Doe 5's motion. (R. 16, Pl.'s Resp. Doe 5.)

Malibu disputes all of Doe 5's arguments and makes four counterarguments. First, Malibu

argues that the Court should not bar it from filing an amended complaint because it alleges a

*prima facie* claim of copyright infringement and "the relief requested by [Doe 5] would

effectively prevent Plaintiff from bringing its valid claim for copyright infringement." (*Id.* at 2-

3.) Second, Malibu argues that joinder is proper because Doe Defendants' participation in a

BitTorrent swarm satisfies Rule 20(a)(2)(A)'s requirement that defendants engaged in the same

"transaction, occurrence, or series of transactions or occurrences." (*Id.* at 3-7.) Third, Malibu

argues that the Court should not quash the subpoena because neither potential for embarrassment

nor misjoinder are appropriate grounds to quash a subpoena. (*Id.* at 8-11.) Fourth, Malibu

argues that sanctions are unwarranted because it has taken every possible step to identify

---

[9] Again, the Court holds filings by *pro se* litigants to less stringent standards than the formal filings usually drafted by lawyers. *See Erickson*, 551 U.S. at 94. As Doe 2 is proceeding *pro se*, the Court construes the arguments raised in his motion liberally.

defendants but cannot do so without a subpoena. (*Id.* at 14.) Malibu does not object to a

protective order allowing Doe 5 to proceed anonymously through the end of discovery. (*Id.* at

12.) On February 20, 2012, Doe 5 replied to Malibu's response and renewed the arguments set

forth in his previous motions. (R. 19, Doe 5's Reply.)

## ANALYSIS

### I.   Motions to quash subpoena

Under Rule 45 of the Federal Rules of Civil Procedure, a court must quash or modify a

subpoena that fails to allow a reasonable time to comply; requires a person who is neither a party

nor a party's officer to travel more than 100 miles; requires disclosure of privileged or other

protected matter, if no exception or waiver applies; or subjects a person to undue burden. Fed.

R. Civ. P. 45(c)(3)(A)(i)-(iv). The party seeking to quash a subpoena bears the burden of

demonstrating that it meets these requirements. *Pac. Century Int'l, Ltd. v. Does 1-37*, 282 F.R.D.

189, 193 (N.D. Ill. 2012) (citing *Williams v. Blagojevich*, No. 05 C 4673, 2008 WL 68680, at *3

(N.D. Ill. Jan. 2, 2008)). Furthermore, a Court is permitted to quash a subpoena that requires the

disclosure of a trade secret or other confidential research, development, or commercial

information; requires the disclosure of an unretained expert's opinion; or requires a person who

is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles

to attend trial. Fed. R. Civ. P. 45(c)(3)(B)(i)-(iii).

#### A.   Whether the subpoena subjects the Putative Defendants to an undue burden

The Putative Defendants argue that the subpoena must be quashed because it imposes an

"undue burden" on them in violation of Federal Rule of Civil Procedure 45(c)(3)(A)(iv). (*See* R.

6, Doe 3's Mot. at 5-6; R. 10, Doe 5's Mot. at 15; R. 14, Doe 2's Mot. at 1.) The Putative

Defendants misunderstand Rule 45(c)(3)(A)(iv)'s "undue burden" requirement. The burden that

8

Rule 45 refers to is burden on the subpoenaed person or entity, not on a third party. As courts have consistently recognized, a subpoena directed to an internet service provider does not compel the defendant to produce any information, and thus does not burden him; rather, it is the internet service provider that is compelled to produce the information. *See Sunlust Pictures, LLC v. Does 1-75*, No. 12 C 1546, 2012 WL 3717768, at *2 (N.D. Ill, Aug. 27, 2012) ("The subpoena does not impose an undue burden on Doe because he is not the party directed to respond to it."); *Hard Drive Prods. v. Does 1-48*, No. 11 CV 9062, 2012 WL 2196038, at *3 (N.D. Ill. June 14, 2012) ("The movant has not explained how he or she has standing to argue that the subpoenas place an undue burden on Comcast (especially where Comcast itself has not objected), and the subpoenas do not burden him or her, because they do not require any action from the movant."); *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 250 (N.D. Ill. 2011) ("The subpoenas served on the Doe Defendants' ISPs do not subject the Doe Defendants to an undue burden; if anyone may move to quash these subpoenas on the basis of an undue burden, it is the ISPs themselves, as they are compelled to produce information under the subpoena."); *see also Malibu Media LLC v. John Does 1-15*, No. 12-2077, 2012 WL 3089383, at *8 (E.D. Pa. July 30, 2012) (citing *First Time Videos, LLC v. Does 1-500,* 276 F.R.D. at 250). In the instant case, the subpoena was issued to Comcast, not to the Putative Defendants. (R. 10-2, Ex. A, Subpoena at 1-4.) Accordingly, the Putative Defendants will suffer no "undue burden" should Comcast produce the information requested by the subpoena.

### B. Whether any alleged burden outweighs any benefits

The Putative Defendants also argue that the subpoena's burden outweighs its relevance in violation of Federal Rule of Civil Procedure 26(b)(2)(C)(iii), which permits courts to limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit,

considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). Doe 3 first argues that the subpoena seeks irrelevant information because "[t]he information linked to an IP address cannot give you the identity of the infringer." (R. 6, Doe's 3 Mot. at 6) (citing *VPR Internationale v. Does 1-1,017*, No. 11–2068, 2011 WL 8179128, at *1-2 (C.D. Ill. April 29, 2011)). Doe 3 also argues that even if the information sought by the subpoena has some relevance, it is "is miniscule at best" and when measured against "the heavy burden of risking significant reputational injury," it fails the balancing test of Rule 26. (*Id.* at 7.) Doe 5 joins this argument and Doe 2 makes a similar argument. (R. 10, Doe 5's Mot. at 15; R. 14, Doe 2's Mot. at 3-6.)

Malibu argues that the information it seeks is "highly relevant" to its claims. (R. 7, Pl.'s Resp. Doe 3 at 3) (quoting *Raw Films, Ltd. v. John Does 1-15*, No. 11-7248, 2012 WL 1019067, at *6 (E.D. Pa. Mar. 26, 2012)). Malibu contends that without the subpoena "it has no other way to identify the defendants" and cannot protect its copyright. (*Id.* at 3.) Malibu concedes that every IP address holder may not be an infringer, but that "it is reasonable to believe that [the subscribers' names and information] will aid in finding the true identity of the infringer." (*Id.* at 4) (quoting *Malibu Media, LLC v. Does 1-15*, 2012 WL 3089383, at *10). According to Malibu, "[t]his is especially true, as in this case, where there is no other way to identify the proper defendants and proceed with claims against them." (*Id.*) (quoting *Malibu Media, LLC v. Does 1-15*, 2012 WL 3089383, at *10).

The Court agrees with Malibu. If the Court were to quash the subpoena as the Putative Defendants urge, it would be impossible for Malibu to protect its copyright against internet infringers. Furthermore, the Putative Defendants do not contest Malibu's argument that "the

*only* way to enforce one's copyrights against online infringement is to subpoena the identity of the subscriber whose internet [connection] was used to commit the infringement." (*Id.* at 5) (emphasis added.) Even if, as the Putative Defendants contend, someone else used their internet connections to copy and distribute Malibu's films, the identity of IP address holders is relevant to Malibu's claims: it can provide a useful starting point for identifying the actual infringer. *See Malibu Media, LLC v. Does 1-15,* 2012 WL 3089383, at *10. Thus, the Court finds that the relevance of the IP address holders' identity outweighs the burden of its subpoena.

## C. The Putative Defendants' denials of liability are premature

The Putative Defendants next argue that the subpoena should be quashed because IP holders are not necessarily responsible for every file that is copied and distributed through their internet connection. (R. 6, Doe 3's Mot. at 4-7; R. 10, Doe 5's Mot. at 9-11, 13-14; R. 14, Doe 2's Mot. at 3-7.) The Putative Defendants argue that someone else who had access to their internet connections—"someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked in the street at any given moment"—is just as likely to be the copyright infringer. (R. 6, Doe 3's Mot. at 4) (quoting *VPR Internationale,* 2011 WL 8179128, at *2). At bottom, the Putative Defendants argue that Malibu cannot prove that they copied and distributed the Copyrighted Works just because they own the IP address associated with the alleged infringement.

Whatever the merits of the Putative Defendants' arguments, they put the cart before the horse: a subpoena cannot be quashed on the basis of general denials of liability. *First Time Videos, LLC v. Does 1-76,* 276 F.R.D. 254, 256 (N.D. Ill. 2011) ("It is well-settled that such general denials of liability cannot serve as a basis for quashing a subpoena.") (collecting cases); *see also First Time Videos, LLC v. Does 1-500,* 276 F.R.D. at 250 ("A general denial of liability

is not relevant as to the validity or enforceability of a subpoena."). Denials of liability are premature at this stage of the litigation. If the Putative Defendants desire to contest liability, those denials "should be presented and contested once parties are brought properly into the suit." *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. at 251. Thus, the Court declines to quash the subpoena on the basis of the Putative Defendants' general denials of liability.

### D.    Doe 2's argument that obscene films are not copyrightable is premature

Doe 2's final argument is that the subpoena should be quashed because Malibu's films are not copyrightable. (R. 14, Doe 2's Mot. at 7.) According to Doe 2, the Copyrighted Works depict illegal and immoral acts, and such "illegal and immoral works have no right to legal protections [under] an ancient common law doctrine stretching back to 19th century England and the Rule in Priestley's Case." (*Id.*) First, this argument ignores that the legal landscape on the issue of whether obscene films are copyrightable has changed. *See* Jennifer E. Rothman, *Sex Exceptionalism in Intellectual Property*, 23 Stan. L. & Pol'y Rev. 119, 140-41 (2012); Ann Bartow, *Pornography, Coercion, and Copyright Law 2.0*, 10 Vand. J. Ent. & Tech. L. 799, 830-34 (2008). Although it is true that at common law, copyright protection was denied to works with sexual content because they were often deemed immoral, today's conventional wisdom "is that copyright law no longer concerns itself with the underlying morality or legality of works when determining their eligibility for copyright." Rothman, *supra*, at 140; *see also* Bartow, *supra*, at 831 (noting that "copyright protection was effectively unavailable for pornography" until the Fifth Circuit's decision in *Mitchell Brothers Film Group v. Cinema Adult Theater*, 604 F.2d 852, 858 (5th Cir. 1979)). In 1979, the Fifth Circuit held in *Mitchell Brothers Film Group* that obscenity was not an affirmative defense to a claim of copyright infringement because nothing in the Copyright Act of 1909 prohibited the copyrighting of obscene materials. *Mitchell*

*Bros. Film Grp.*, 604 F.2d at 854, 858. A few years later, the Ninth Circuit also rejected an

obscenity defense to copyright infringement. *Jartech, Inc. v. Clancy*, 666 F.2d 403, 406 (9th Cir.

1982). And, quite recently, the Seventh Circuit expressed some comfort with the idea that

obscene films deserve copyright protection. *See Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755-

56 (7th Cir. 2012). In *Flava Works*, the plaintiff, a copyright holder "specializ[ing] in the

production and distribution of videos of black men engaged in homosexual acts," brought a

copyright infringement suit against a social bookmarking website. *Id.* The Seventh Circuit,

relying on *Jartech*, noted that although some might disapprove of the plaintiff's service "there is

no suggestion that it is illegal; and anyway the prevailing view is that even illegality is not a bar

to copyrightability." *Id.* at 755 (citing *Jartech*, 666 F.2d at 406; *Mitchell Bros. Film Grp.*, 604

F.2d at 854-55; *Belcher v. Tarbox*, 486 F.2d 1087, 1088 (9th Cir. 1973); 1 Melville B. Nimmer

& David Nimmer, *Nimmer on Copyright* § 2.17 (2012)). The Seventh Circuit further recognized

that, "obscenity is a community standard which may vary to the extent that controls thereof may

be dropped by a state altogether," and cautioned that "[a]cceptance of an obscenity defense

would fragment copyright enforcement, protecting registered materials in a certain community,

while, in effect, authorizing pirating in another locale." *Id.* (internal quotation marks omitted)

(quoting *Jartech*, 666 F.2d at 406).

Second, whatever the merits of Doe 2's argument, the issue here is not whether Malibu's

films are copyrightable, but whether the Court should quash the subpoena. Federal Rule of Civil

Procedure 45 allows a court to quash a subpoena under limited circumstances. Fed. R. Civ. P.

45(c). As articulated above, a Court is required to quash a subpoena that fails to allow a

reasonable time to comply; requires a person who is neither a party nor a party's officer to travel

more than 100 miles; requires disclosure of privileged or other protected matter, if no exception

or waiver applies; or subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(i)-(iv).

Furthermore, a Court is permitted to quash a subpoena that requires the disclosure of information

such as trade secrets or an unretained expert's opinion; or requires a person who is neither a

party nor a party's officer to incur substantial expense to travel more than 100 miles to attend

trial. Fed. R. Civ. P. 45(c)(3)(B)(i)-(iii). Doe 2's argument about the copyrightability of

Malibu's films is not relevant to the validity or enforceability of a subpoena. Doe 2's argument

goes to the merits of Malibu's legal claims and should therefore be raised once the parties are

brought properly into the suit; at this time, the argument is not ripe. *See Reno v. Catholic Soc.*

*Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993); *cf. Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. v.*

*Does 1-4,577*, 736 F. Supp. 2d 212, 215 (D.D.C. 2010) ("[T]he merits of this case are not

relevant to the issue of whether the subpoena is valid and enforceable.") Accordingly, the Court

declines to quash the subpoena on the basis that Malibu's films may not be copyrightable. Thus,

because none of the Putative Defendants' arguments provide a basis on which to quash a

subpoena, the Court declines to do so and denies the Putative Defendants' motions to quash.

## II.     Motions to sever for improper joinder

Each Putative Defendant also moves to sever, and each argues that joinder is improper

because Malibu's claims do not arise out of the same transaction, occurrence, or series of

transactions or occurrences. (R. 6, Doe 3's Mot. at 2-5; R. 10, Doe 5's Mot. at 7-13; R. 14, Doe

2's Mot. at 1-3.) Federal Rule of Civil Procedure 20(a)(2) allows for the permissive joinder of

defendants. To satisfy Rule 20(a)(2), a plaintiff must assert a right to relief against a group of

defendants jointly, severally, or in the alternative. Fed. R. Civ. P. 20(a)(2)(A). In addition, a

party must satisfy two preconditions: (1) the claim must be "with respect to or arising out of the

same transaction, occurrence, or series of transactions or occurrences," and (2) there must be at

least one question of law or fact common to all defendants. Fed. R. Civ. P. 20(a)(2)(A)-(B).

Where a plaintiff fails to satisfy the requirements for permissive joinder, the Court may add or

drop a party or sever any claim against a party pursuant to Federal Rule of Civil Procedure 21.

Fed. R. Civ. P. 21; *see also In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012) ("When

considering a motion to sever under Rule 21, 'courts have looked to Rule 20 for guidance.'")

(quoting *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010)).

"Under the [Federal Rules of Civil Procedure], the impulse is toward entertaining the broadest

possible scope of action consistent with fairness to the parties; [thus,] joinder of claims, parties

and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724

(1966). Furthermore, the purpose of Rule 20(a) is "to promote trial convenience and expedite

the final determination of disputes, thereby preventing multiple lawsuits." 7 Charles Alan

Wright, et al., *Federal Practice and Procedure* § 1652 (3d ed. 1998).

The Court has wide discretion in deciding whether to sever a defendant for improper

joinder if it determines that the addition of the defendant will not foster the objectives of Rule

20(a). *Chavez v. Ill. State Police*, 251 F.3d 612, 632 (7th Cir. 2001) ("we . . . accord wide

discretion to a district court's decision concerning the joinder of parties") (citing *Intercon

Research Assocs., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 56 (7th Cir. 1982)). This discretion

allows the "trial court to consider, in addition to the requirements of Rule 20, other relevant

factors in a case in order to determine whether the permissive joinder of a party will comport

with the principles of fundamental fairness." *Id.* (internal quotation marks omitted) (quoting

*Desert Empore Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)). Thus, if

joinder would result in prejudice or needless delay, the Court may deny joinder. *Id.* (citing

Wright, et al., *supra*, § 1652).

15

## A. Whether Doe Defendants' participation in a BitTorrent swarm constitutes a "transaction, occurrence, or series of transactions or occurrences"

Although the phrase "transaction or occurrence" is not defined in Rule 20(a), the Court is guided by a recent Federal Circuit decision in a patent infringement case which articulated a useful standard for what constitutes a "transaction or occurrence" under Rule 20. *In re EMC Corp.*, 677 F.3d at 1356. There, the Federal Circuit began by looking at the plain language of Rule 20 and noting that "Rule 20 clearly contemplates some joinder of claims arising from a 'series of transactions or occurrences'—a single transaction is not required." *Id.* The Federal Circuit further recognized "that where defendants are alleged to be jointly liable, they may be joined under Rule 20 because the transaction-or-occurrence test is always satisfied." *Id.* (citing *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990)). But, Rule 20 also allows for the permissive joinder of defendants where a right to relief is asserted against the defendants "severally, or in the alternative,"[10] Fed. R. Civ. P. 20(a)(2)(A), "so an allegation of joint liability is not required," *In re EMC Corp.*, 677 F.3d at 1356. In support of this interpretation, the Federal Circuit also looked to *United States v. Mississippi*, 380 U.S. 128, 142-43 (1965), and the origins of Rule 20. *In re EMC Corp.*, 677 F.3d at 1356.

---

[10] Defendants may be joined severally where the liability is "separate and distinct" between defendants, such that the plaintiff could "bring a separate action against one defendant without joining the other liable parties." Black's Law Dictionary 933 (8th ed. 2004); *Patrick Collins, Inc. v. Does 1-21*, 282 F.R.D. 161, 166 n.10 (E.D. Mich. 2012), *report and recommendation adopted*, 286 F.R.D. 319 (E.D. Mich. 2012) ("A right to relief severally against defendants means that each right to relief is separate and distinct from defendant to defendant and no interaction among the defendants is required."). By contrast, "[t]he need for alternative joinder of defendants typically arises when the substance of plaintiff's claim indicates that plaintiff is entitled to relief from someone, but the plaintiff does not know which of two or more defendants is liable under the circumstances set forth in the complaint." 7 Wright, et al., § 1654; *accord Patrick Collins, Inc. v. Does 1-21*, 282 F.R.D. at 166 n.10 ("An 'alternative' right to relief may be asserted when plaintiff knows one of the defendants is liable, but does not know which one.") (citing 4 James Wm. Moore, et al., *Moore's Federal Practice* § 20.03 (3d ed. 1999)).

In *United States v. Mississippi*, the United States brought suit against the State of

Mississippi alleging that three election commissioners and six county voting registrars were

acting as part of a State-wide system to deprive black citizens of the right to vote. 380 U.S. at

142-43. In ruling on five voting registrars' motions to sever, the lower court held that joinder

was inappropriate because there was no "charge of joint wrong-doing by the individual

defendant registrars." *United States v. Miss.*, 229 F. Supp. 925, 943 (S.D. Miss. 1964), *rev'd*,

380 U.S. 128 (1965). According to the lower court, "each act of registration or failure or refusal

to register [necessarily] [took] place separately and apart from every other act of registration or

non-registration," and the complaint did not contain any allegations that the acts of registration

or failure or refusal to register were "part of any transaction or occurrence concerned with

similar acts in a separate county." *Id.* The Supreme Court reversed and remanded, holding that

joinder of the election registrars was proper because the registrars participated in "a series of

transactions or occurrences." 380 U.S. at 143. On the basis of *United States v. Mississippi*, the

Federal Circuit therefore concluded that in addition to the text of Rule 20, "[t]he cases make

equally clear the fact that the defendants are independent actors does not preclude joinder as long

as their actions are part of the 'same transaction, occurrence, or series of transactions or

occurrences.'" *In re EMC*, 677 F.3d at 1356.

The Federal Circuit next traced the history of Rule 20(a) back to the "English Rules

Under the Judicature Act (The Annual Practice, 1937)," which are explicitly referenced in the

advisory committee notes to Rule 20(a)(2). *Id.* at 1356-57; *see also* Fed. R. Civ. P. 20(a)(2),

advisory committee's note to 1937 Adoption. According to the Federal Circuit, the referenced

edition of the Annual Practice made clear that "claims in respect of separate torts may be

joined.'" *In re EMC Corp.*, 677 F.3d at 1357. Thus, on the basis of the plain text of Rule 20,

Supreme Court precedent, and the history of Rule 20 itself, the Federal Circuit concluded that "the mere fact that a case involves independent actors as defendants does not necessarily bring the case outside the scope of Rule 20." *Id.*

Having reached the conclusion that independent actors can be joined in a single action, the question that then follows is "under what circumstances is the joinder of independent actors permissible under Rule 20." *Id.* at 1356. To answer this question, the Court must look to the meaning of the terms "transaction or occurrence." Courts that have interpreted this phrase have looked to Rule 13(a) for compulsory counterclaims which contains a similar transaction or occurrence test. Fed. R. Civ. P. 13(a) ("a pleading must state as a counterclaim any claim that— at the time of its service—the pleader has against an opposing party if the claim: arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."); *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (noting that although "[n]o hard and fast rules" have been established under Rule 20, "construction of the terms 'transaction or occurrence' as used in the context of Rule 13(a) counterclaims offers some guide"). For purposes of Rule 13(a), the Supreme Court has previously stated that, "'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. N.Y. Exch.*, 270 U.S. 593, 610 (1926). This has been interpreted to mean that, for purposes of Rule 13(a), "all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Mosley*, 497 F.2d at 1333 (citing Wright, et al., § 1653). Relying on Professors Wright and Miller, the Federal Circuit noted that "[t]he logical-relationship test employed under Rule 13(a) seems consistent with the philosophy underlying the passage in Rule 20 that allows joinder of parties whenever the claims

arise out of the same series of transactions or occurrences." *In re EMC Corp.*, 677 F.3d at 1358

(internal quotation marks omitted) (quoting 7 Wright, et al., *supra*, § 1653). It has also been said

that "the flexibility of this standard enables the federal courts to promote judicial economy by

permitting all reasonably related claims for relief by or against different parties to be tried in a

single proceeding under the provisions of Rule 20." 7 Wright, et al., *supra*, § 1653; *see also*

*Mosley*, 497 F.2d at 1333 (analogizing the terms "transaction or occurrence" as used in Rule

13(a) and reasoning that "the terms as used in Rule 20 would permit all reasonably related claims

for relief by or against different parties to be tried in a single proceeding"). Against this

backdrop, the Federal Circuit thus concluded that "independent defendants satisfy the

transaction-or-occurrence test of Rule 20 when there is a logical relationship between the

separate causes of action." *In re EMC*, 677 F.3d at 1356. Furthermore, "the logical relationship

test is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of

action against each defendant. In other words, the defendants' allegedly infringing acts, which

give rise to the individual claims of infringements, must *share* an aggregate of operative facts."

*Id.* at 1358. The Federal Circuit further elaborated:

> Claims against independent defendants (i.e., situations in which the defendants
> are not acting in concert) cannot be joined under Rule 20's transaction-or-
> occurrence test unless the facts underlying the claim of infringement asserted
> against each defendant share an aggregate of operative facts. To be part of the
> "same transaction" requires shared, overlapping facts that give rise to each cause
> of action, and not just distinct, albeit coincidentally identical, facts.

*Id.* at 1359. Thus, the question before the Court is whether Malibu has pleaded that each Doe

Defendant's alleged acts of infringement (the downloading and uploading of pieces of the

Copyrighted Works through BitTorrent) share an aggregate of operative facts that give rise to the

claim of infringement against each Doe Defendant.

Doe 3 argues that joinder is improper because Malibu's claims against Doe Defendants do not arise out of the same "transaction, occurrence, or series of transactions or occurrences." (R. 6, Doe 3's Mot. at 2.) Specifically, he argues that Doe Defendants' use of BitTorrent should not be considered a "transaction" or "series of transactions" because there is no evidence that Doe Defendants "acted in concert" with one another. (*Id.* at 3.) He elaborates as follows:

> The individual defendants could have likely chosen, at different times, to download a torrent file and allow the BitTorrent client to reconstruct the film. It is plausible that these peers never considered their interaction with others in the swarm, and the Complaint does not allege that the peers deliberately acted in concert with one another by exchanging data.

(*Id.*) (citing *Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1163 (N.D. Cal. 2011)). He also argues that "individual defenses" make joinder inappropriate. (*Id.*) (quoting *Bubble Gum Prods., LLC v. Does 1-80*, No. 12-20367-CIV, 2012 WL 2953309, at *4 (S.D. Fla. July 19, 2012)). Does 5 and 2 make similar arguments. Doe 5 argues that Malibu's factual allegations have failed to allege a BitTorrent swarm because Doe Defendants' downloads "occurred over a 5 week period by 6 unrelated parties." (R. 10, Doe 5's Mot. at 7.) He observes that none of the downloads "occurred on the same date, and only two of them could even be alleged to have occurred in the same week." (*Id.* at 8.) In other words, the downloads were too removed from one another in time to be considered the same "transaction" or "series of transactions" for purposes of Rule 20.[11] Doe 2 repeats this argument. (R. 14, Doe 2's Mot. at 1-3.) In short, the Putative Defendants argue that because Malibu cannot prove that any of them shared data *directly with each other*, Malibu should not be able to join them in the same action.

---

[11] Doe 5 further contends that his IP address may have changed during the time period in which the alleged downloads took place. (R. 10, Doe 5's Mot. at 8-9.) Therefore, he might not have been in the "swarm" for the entire five week period. (*Id.* at 9.) This is a factual dispute, however, and the Court reserves ruling on this argument until a later stage of the litigation.

They argue that the only link between them—participation in the same BitTorrent swarm—is too attenuated to provide a basis for joinder.

Malibu argues that participation in a BitTorrent swarm constitutes a "series of transactions" for Rule 20 purposes. (R. 7, Pl.'s Resp. Doe 3 at 8-9.) It argues that defendants may be permissively joined under Rule 20 even when they do not directly interact with each other. (*Id.* at 9-10) (citing *United States v. Miss.*, 380 U.S. at 142-43). Malibu also argues that the time frame in which defendants participated in the swarm is irrelevant for joinder. (*Id.* at 11.) Rather, "it is enough [for joinder] that the alleged BitTorrent infringers participated in the same series of uploads and downloads in the same swarm." (*Id.*) (quoting *Patrick Collins, Inc. v. Does 1-21*, 282 F.R.D. 161, 168 (E.D. Mich. 2012), *report and recommendation adopted*, 286 F.R.D. 319 (E.D. Mich. 2012)).

Although there are compelling arguments on both sides, the Court finds that the alleged conduct of each Doe Defendant shares an aggregate of operative facts that give rise to Malibu's claims of infringement against each Doe Defendant, such that the "logical relationship" test is satisfied at this early stage of the litigation. In other words, Malibu has sufficiently pleaded that its claims arise out of the same "transaction, occurrence, or series of transactions or occurrences." Specifically, Malibu alleges that each Doe Defendant used BitTorrent to copy and distribute its Copyrighted Works without Malibu's permission. (R. 1, Compl. ¶¶ 17-47.) Malibu also alleges that Doe Defendants' use of BitTorrent necessarily involved the simultaneous downloading and uploading of pieces of the Copyrighted Works in a swarm. (*Id.* ¶¶ 32-38.) Furthermore, Malibu alleges that IPP's investigation demonstrated that each Doe Defendant had pieces of the Copyrighted Works that contained the same hash identifier. (*Id.* ¶ 42.) The significance of this is not to be overlooked. As one court has observed, "in the universe of

possible transactions, at some point, each Defendant downloaded a piece of the [Copyrighted Works], which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP." *Patrick Collins, Inc. v. Does 1-21*, 282 F.R.D. at 165. The shared operative facts are not solely that each Doe Defendant used BitTorrent, but that "each Doe Defendant downloaded the same Torrent file that was created by the same initial seeder, intending to: 1) utilize other users' computers to download pieces of the same [Copyrighted Works], and 2) allow his . . . own computer to be used in the infringement by other peers and Defendants in the same swarm." *Patrick Collins, Inc. v. Does 1-21*, 282 F.R.D. at 165. Thus, the Court concludes that, at this stage of the litigation, there is a sufficient logical relationship between the causes of action to satisfy Rule 20's "transaction or occurrence" requirement. As another court has reasoned,

> it is difficult to see how the sharing and downloading activity alleged in the Complaint—a series of individuals connecting either directly with each other or as part of a chain or "swarm" of connectivity designed to illegally copy and share the exact same copyrighted file—could *not* constitute a "series of transactions or occurrences" for purposes of Rule 20(a).

*Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 244 (S.D.N.Y. 2012); *accord First Time Videos, LLC v. Does 1-500*, 276 F.R.D. at 252 (concluding in a similar case where defendants were alleged to have used BitTorrent to copy the plaintiff's copyrighted works that, "[b]ased on these allegations, each Doe Defendant is a possible source of FTV's copyrighted materials, and each may be responsible for distributing the same to any other Putative Defendant").

In reaching this result, the Court recognizes that district courts across the Country are split on whether a BitTorrent swarm constitutes a "transaction, occurrence, or series of transactions or occurrences" under Rule 20, and no Court of Appeals has spoken on the issue. Some courts have reached the same result as this court and have held that participation in the

same BitTorrent swarm is enough to constitute a "series of transactions or occurrences" under Rule 20(a). *See, e.g., Patrick Collins, Inc. v. Does 1-21*, 282 F.R.D. at 168; *Patrick Collins, Inc. v. Does 1-15*, No. 11–cv–02164–CMA–MJW, 2012 WL 415436, at *2-*4 (D. Colo. Feb. 8, 2012); *Digital Sin, Inc.*, 279 F.R.D. at 244; *Donkeyball Movie, LLC, v. Does 1-171*, 810 F. Supp. 2d 20, 30 (D.D.C. 2011); *K-Beech, Inc. v. Does 1-57*, No. 2:11–cv–358–FtM–36SPC, 2011 WL 5597303, at *6 (M.D. Fla. Nov. 1, 2011); *W. Coast Prods., Inc. v. Does 1-5829*, 275 F.R.D. 9, 15-16 (D.D.C. 2011); *MCGIP, LLC. v. Does 1-18*, No. C–11–1495 EMC, 2011 WL 2181620, at *1 (N.D. Cal. June 2, 2011); *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 342-43 (D.D.C. 2011).

Other courts have held that joinder is improper where the plaintiff is unable to show that the defendants were present in the same swarm at the same time or in close temporal proximity. *See Malibu Media, LLC v. Reynolds*, No. 12 C 6672, 2013 WL 870618, at *10 (N.D. Ill. Mar. 7, 2013) (collecting cases and requiring plaintiff to establish that defendants were simultaneously present in the same swarm or that they accessed the swarm in close temporal proximity). And still others have held that individuals in a swarm do not necessarily share information directly with one another and therefore do not participate in the same series of transactions or occurrences. *See, e.g., Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 669, 672 (S.D. Fla. 2011) ("Merely participating in a BitTorrent swarm does not equate to participating in the same 'transaction, occurrence, or series of transactions or occurrences.'"); *Hard Drive Prods., Inc. v. Does 1-30*, No. 2:11cv345, 2011 WL 4915551, at *4 (E.D. Va. Oct. 17, 2011); *Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d at 1163; *Pac. Century Int'l Ltd. v. Does 1-101*, No. C–11–02533–(DMR), 2011 WL 2690142, at *3-4 (N.D. Cal. July 8, 2011). In addition, although courts within this District are also divided, the prevailing practice is to allow

this type of joinder. *Compare Sunlust Pictures, LLC*, 2012 WL 3717768, at *4 (finding joinder proper); *Pac. Century Int'l v. Does 1-31*, No. 11 C 9064, 2012 WL 2129003, at *3 (N.D. Ill. June 12, 2012) (same); *Hard Drive Prods., Inc. v. Does 1-55*, No. 11 C 2798, 2011 WL 4889094, at *5 (N.D. Ill. Oct. 12, 2011) (same); *First Time Videos, LLC v. Does 1-76*, 276 F.R.D. at 257 (same); *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. at 252 (same); *MGCIP v. Does 1-316*, No. 10 C 6677, 2011 WL 2292958, at *2 (N.D. Ill. June 9, 2011) (same), *with Malibu Media, LLC v. Reynolds*, 2013 WL 870618, at *14 (finding joinder inappropriate); *Lightspeed v. Does 1-1,000*, No. 10 C 5604, 2011 WL 8179131, at *3 (N.D. Ill. March 31, 2012) (same); *Millenium TGA Inc. v. Does 1-800*, 10 C 5603, 2011 WL 10468128, at *1 (N.D. Ill. Mar. 31, 2011) (same); *CP Prods., Inc. v. Does 1-300*, 10 C 6255, 2011 WL 737761, at *1 (N.D. Ill. Feb. 24, 2011).

Those courts that require plaintiffs to establish that defendants were in the swarm at the same time or in close temporal proximity so as to join them in a single suit ignore that permissive joinder under Rule 20(a) does not require that defendants act in concert with each other, *see United States v. Miss.*, 380 U.S. at 143-43, nor does it "have as a precondition that there be temporal distance or temporal overlap." *Patrick Collins, Inc. v. Does 1-21*, 282 F.R.D. at 167. All that is required is a logical relationship between the separate causes of action. *In re EMC Corp.*, 677 F.3d at 1358; *accord Mosley*, 497 F.2d at 1333 (citing *Moore*, 270 U.S. at 610). Furthermore, it is this Court's view that those courts that require plaintiffs to establish that the defendants share information directly with each other have construed Rule 20 too narrowly. It suffices for joinder that defendants indirectly interact with one another through participation in the same BitTorrent swarm. As one court has recognized, "it is important to consider that while a peer directly uploads to only a small number of peers, those peers in turn upload pieces to other peers that later join the swarm. Thus, a defendant's 'generation' of peers—peers that a

24

defendant likely directly uploaded to—helped pass on pieces of the [Copyrighted] Work to the next 'generation' of active peers." *Third Degree Films v. Does 1-36*, 11-CV-15200, 2012 WL 2522151, at *9 (E.D. Mich. May 29, 2012). These indirect interactions between Doe Defendants constitute "shared, overlapping facts" that suffice to establish a "series of transactions or occurrences." *Id.* at *8-9; *Third Degree Films v. Does 1-47*, 286 F.R.D. 188, 194-95 (D.Mass. 2012).

In addition, Doe 3's argument that "[i]t is plausible that these peers never considered their interaction with others in the swarm, and the Complaint does not allege that the peers deliberately acted in concert with one another by exchanging data," (R. 6, Does 3's Mot. at 3), is unavailing. Ignorance is not a viable defense in the criminal context, and it is not a viable defense against joinder in this copyright infringement suit. For example, in *United States v. Richardson*, the Fifth Circuit recently upheld a criminal defendant's conviction for distribution of child pornography where the defendant had merely stored the images in a shared folder accessible on LimeWire, a peer-to-peer file-sharing program. No. 11-20773, 713 F.3d 232, --- (5th Cir. Apr. 1, 2013). After a user downloads or installs the LimeWire software, "either the user selects a folder to store downloaded files or the installation program designates the shared folder as the default folder into which files are automatically downloaded." *Id.* Files that are downloaded into or stored in the shared folder are available to anyone on the peer-to-peer network for downloading. *Id.* In *Richardson*, the defendant argued that there was no evidence that he distributed the files in his shared folder and that he did not control whether others would download files from him; "he merely kept files in a 'shared folder,' such that others could gain access to the files on the computer only if they affirmatively initiated a download." *Id.* The Fifth Circuit rejected the defendant's argument and held that "downloading images and videos

containing child pornography from a peer-to-peer network and storing them in a shared folder accessible to other users on the network amounts to distribution." *Id.*; *see also United States v. Chiaradio*, 684 F.3d 265, 282 (1st Cir. 2012) (affirming defendant's conviction for possession and distribution of child pornography where defendant used LimeWire to download and store images and videos, and concluding that "the fact that the defendant did not actively elect to transmit those files is irrelevant" to the determination of whether distribution occurred); *United States v. Shaffer*, 472 F.3d 1219, 1223-24 (10th Cir. 2007) (affirming defendant's conviction for distribution of child pornography where defendant downloaded images and videos from the Kazaa peer-to-peer network and stored them in a shared folder). Notably, BitTorrent users do not merely store the files they download on a shared folder that is then accessible to other users. Instead, BitTorrent is structured such that each peer is forced to automatically upload each file he downloads (R. 1, Compl. ¶ 34), and therefore, unlike LimeWire users, each peer can be said to have actively uploaded files to other users.

The Court's conclusion that, at this stage of the litigation, participation in a BitTorrent swarm satisfies Rule 20(a)(2)(A)'s requirement that defendants engaged in a "series of transactions or occurrences" also furthers the principle behind permissive joinder—efficient judicial administration. Wright, et al., *supra*, § 1653. At the pleading stage, it is more efficient to join Doe Defendants in one action than to require separate lawsuits. Individual litigations, at least at the early stages of litigation, would be needlessly expensive for both Malibu and the courts and would frustrate the judicial efficiency policies that lie at the heart of Rule 20. For all of the reasons above, the Court holds that at this stage of the litigation, Malibu's allegations that Doe Defendants participated in the same BitTorrent swarm satisfy Rule 20(a)'s "transaction or occurrence" requirement.

**B.    Whether there are any questions of law or fact common to all defendants**

Rule 20(a) also requires that there be a shared question of law or fact common to all defendants. Fed. R. Civ. P. 20(a)(2)(B). The Court finds that Doe Defendants share common questions of fact and law. The common questions of fact include whether they copied Malibu's Copyrighted Works through BitTorrent and whether they distributed Malibu's films through BitTorrent. "[T]he factual inquiry into the method used in any alleged copyright infringement will be substantially identical, as the methods [Malibu] will use to investigate, uncover, and collect evidence about any infringing activity will be the same as to each Doe Defendant." *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. at 252. Doe Defendants likewise share a common question of law: whether copying and distributing Malibu's films through a BitTorrent swarm constitutes direct or contributory copyright infringement or both. At least at the pleading stage, these questions are common to each Doe Defendant.

**C.    Whether joinder results in unfairness to the parties**

Finally, the Court concludes that at this stage of the litigation, joinder results in no unfairness to the parties. Severance would result in delay to the parties and frustrate a just, speedy, and inexpensive resolution to Malibu's claims, who is assumed to be a valid copyright holder, at least at this stage of the proceedings. *See id.* at 252-53 ("[S]everance is more likely to cause delays and prejudice [the plaintiff] and future named defendants alike.") Severance at this stage would also be inefficient as it would force the Court to conduct multiple litigations on the same factual and legal issues. Multiple litigations would require more of the Court's time, money, and effort in issuing similar orders and opinions and would also prejudice Malibu as litigation against each defendant would then require its own filing fees, "a multiplication of expense that would [ ] inhibit [the plaintiff's] ability to protect its legal rights." *Id.* at 253. In

27

reaching this result, the Court is mindful that Malibu only named six individual defendants and therefore the concern some courts have expressed in similar cases about the need to conduct scores of mini-trials is significantly diminished. *Cf. Third Degree Films v. Does 1-47*, 286 F.R.D. at 196 ("The Court simply cannot see how it 'promote[s] trial convenience' to hold forty-seven min-trials and ask one jury to make findings as to each of them."); *Patrick Collins, Inc. v. Does 1-38*, No. 12-10756-NMG, --- F. Supp. 2d ---, 2013 WL 1175245, at *11 (D.Mass. Mar. 19, 2013) (finding that joinder would complicate rather than expedite the litigation where 34 doe defendants remained). In addition, joinder at this time does not prejudice Doe Defendants because they "may benefit from being able to obtain communal discovery and observe the defenses raised by the other defendants." *Malibu Media, LLC v. Does 1-15*, 2012 WL 3089383, at *4. Each Doe Defendant will have the chance to present individual defenses to Malibu's allegations once the litigation reaches the merits.

The Court emphasizes that the joinder of claims during pleading, discovery, or early motion practice does not necessarily mean that the claims will be joined throughout the entirety of litigation. At this stage of the litigation, it appears that joinder will be manageable because only five Doe Defendants remain. If joinder becomes unwieldy at a later stage of the litigation, however, the Court may sever Doe Defendants at that time pursuant to Federal Rule of Civil Procedure 21. Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.") In addition, the Court notes that individual defenses may raise legal and factual differences between Doe Defendants that make joinder inappropriate. (*See* Doe 3's Mot. at 3.) At this stage, however, Doe Defendants have not made a showing that joinder will result in undue prejudice or needless delay. Until Doe Defendants are able to introduce such information into the record, the Court finds that joinder is proper under of Rule 20(b).

28

### III. Motion to dismiss for lack of personal jurisdiction

The Court next considers the Putative Defendants' arguments that the Court lacks personal jurisdiction over them because they have not yet been served with a complaint. (R. 6, Doe 3's Mot. at 7; R. 10, Doe 5's Mot. at 13; R. 14, Doe 2's Mot. at 5.) Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may present a motion to dismiss for lack of personal jurisdiction. Such assertions will become relevant, however, once the Putative Defendants are named as parties in this suit. Because they are not yet parties to this suit, the Court finds that their argument is premature. *First Time Videos, LLC v. Does 1-76*, 276 F.R.D. at 259 (finding putative defendants' personal jurisdiction arguments "premature" when ruling upon Doe defendants' motions to quash subpoenas); *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. at 251 ("Defendants cannot be dismissed under Federal Rule of Civil Procedure 12(b)(2) from a lawsuit to which they are not yet parties."). The Putative Defendants may dispute this Court's assertion of personal jurisdiction once they are properly named in the complaint, and until then the issue is not ripe for adjudication. *See Reno*, 509 U.S. at 57 n.18.

### IV. Motion for protective order to proceed anonymously

Doe 5 also moves for a protective order to proceed anonymously. (R. 10, Doe 5's Mot. at 15.) Although Doe 2 does not explicitly request similar relief, Doe 2 thanks the Court "for protecting [his] personal information from this matter." (R. 14, Doe 2's Mot. at 7.) Similarly, Doe 3 expresses concerns about the "reputational injury, harassment, and embarrassment" that a young person such as himself may face from public exposure. (R. 6, Doe 3's Mot. at 5-6.) Because Does 2 and 3 are proceeding *pro se*, the Court interprets their arguments as requests to proceed anonymously. *See Castro v. United States*, 540 U.S. 375, 381-82 ("Federal courts

sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category.").

The Federal Rules of Civil Procedure provide that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The moving party bears the burden of showing that good cause exists for a protective order. *See Cent. States, Se. & Sw. Areas Pension Fund v. Nat'l Lumber Co.,* No. 10 C 2881, 2012 WL 2863478, at *2, (N.D. Ill. July 11, 2012) (citing *Jepson, Inc. v. Makita Elec. Works, Ltd.,* 30 F.3d 854, 858 (7th Cir. 1994)). In deciding whether good cause exists, a "district court must balance the interests of the parties, taking into account the harm to the party seeking the protective order and the importance of the disclosure to the nonmoving party." *Rangel v. City of Chi.,* No. 10 C 2750, 2010 WL 3699991, at *1 (N.D. Ill. Sept. 13, 2010) (citing *Wiggins v. Burge,* 173 F.R.D. 226, 229 (N.D. Ill. 1997)). A district court may also consider "privacy interests, whether the information is important to public health and safety and whether the party benefitting from the confidentiality of the protective order is a public official." *Wiggins,* 173 F.R.D. at 229. "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Gordon v. Countryside Nursing & Rehab. Ctr., LLC,* No. 11 C 2433, 2012 WL 2905607, at *2 (N.D. Ill. July 16, 2012).

Doe 5 argues that the allegation of copying and distributing obscene films presents a high potential for injury to him and the other Doe Defendants. (R. 10, Doe 5's Mot. at 15-17.) To mitigate this risk, Doe 5 asks the Court for a protective order to proceed anonymously. (*Id.* at 15.) Doe 5 asserts that "the risk of false positives" is one reason to grant a protective order and allow him to proceed anonymously. (*Id.* at 16.) Specifically, he asserts that he did not download

the Copyrighted Works at issue and that "the damage a false allegation of this sort would do to [his] professional reputation, which is subject to background checks, would be severe." (*Id.* at 17.) In support of his request, Doe 5 observes that other courts in this District have allowed doe defendants to proceed anonymously in similar cases. (*Id.* at 16) (citing *Sunlust Pictures, LLC,* 2012 WL 3717768, at *5-6; *AF Holdings LLC v. Doe,* No. 12 C 4222, 2012 WL 5520861, at *3 (N.D. Ill. Nov. 13, 2012)). These courts have reasoned that copying and distributing pornography involves "matters of a sensitive and highly personal nature," that deserve some protection from the public eye. *Sunlust Pictures, LLC,* 2012 WL 3717768, at *5 (internal quotation marks omitted) (quoting *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe,* 599 F.2d 707, 712–13 (5th Cir. 1979) (noting that the parties agreed that in "matters of a sensitive and highly personal nature, . . . anonymous litigation may be permitted"); *see also AF Holdings,* 2012 WL 5520861, at *3 (reasoning that a disputed allegation that the plaintiff allegedly downloaded an obscene film was a matter of a sensitive and highly personal nature). These courts also recognize that allowing doe defendants in similar cases a temporary degree of anonymity—at least through discovery—mitigates concerns about coercive settlement tactics. *Sunlust Pictures, LLC,* 2012 WL 3717768, at *6; *AF Holdings,* 2012 WL 5520861, at *3.

The Court finds Doe 5's argument persuasive. Often, the mere accusation of certain conduct is enough to arouse the suspicion of one's neighbors, colleagues, and family. The Court agrees that a temporary grant of anonymity protects putative defendants against potentially abusive settlement tactics. *Cf. Sunlust Pictures, LLC,* 2012 WL 3717768, at *5 ("Judges within this district have recognized that plaintiffs in these types of cases might unfairly threaten to disclose defendants' identities in order to improperly leverage settlement negotiations.") (citing *Hard Drive Prods. v. Does 1-48,* 2012 WL 2196038, at *6). This protection is especially

warranted where plaintiffs, like Malibu, identify Doe Defendants by the imperfect means of an IP address. *See e.g., Digital Sin, Inc.*, 279 F.R.D. at 242 (estimating that "30% of the names turned *over* by ISPs are not those of individuals who actually downloaded or shared the copyrighted material"). "To allay Doe 5's concern about embarrassment and reputational injury," Malibu does not object to a protective order allowing Doe 5 to file under seal and to remain anonymous through the end of discovery. (R. 16, Pl.'s Resp. Doe 5 at 12.) Nonetheless, Malibu observes that such an order might not allow it to comply with the Court's November 8 Minute Order requiring it to file an "amended complaint which names actual defendants." (*Id.*)

In light of Malibu's concerns, the Court will grant Malibu leave from its previous Minute Order so that it can submit an amended complaint that maintains the anonymity of Does 2, 3, and 5. Malibu states, and Doe 5 does not contest, that the Court has discretion to issue such an order. (*See id.*) (citing *Sunlust Pictures, LLC*, 2012 WL 3717768, at *5). In the exercise of its discretion, the Court thus allows Does 2, 3, and 5 to proceed anonymously during the discovery phase of this suit and prohibits Malibu from revealing their identities in any public filing or communication absent prior express authorization by this Court. This course of action is proper because at this stage of the litigation, the Putative Defendants' interest in proceeding anonymously outweighs the public's interest in knowing their identities. *Sunlust Pictures, LLC*, 2012 WL 3717768, at *5. Likewise, Malibu will not be prejudiced because it will know the Putative Defendants' true identities. The Court also reserves the right to revisit this issue at a later stage of the litigation.

## V.     Motion for Rule 11 sanctions

Doe 5 separately argues that Malibu's subpoena warrants sanctions under Federal Rules of Civil Procedure 11 and 45(c)(1). (R. 10, Doe 5's Mot. at 14.) Doe 5 argues that Malibu's

subpoena "does not comply with the Court's Minute Order" because the subpoena is unlikely to identify the actual infringer. (*Id.* at 13-14.) Doe 5 suggests that because he has unsecured wireless internet, *anyone* within the geographic limitations of his internet signal could have copied and distributed the films. (*Id.* at 10.) Thus, Doe 5 contends, subpoenaing him solely on the basis of his IP address violates the Court's Minute Order to find the "responsible [d]efendants." (*Id.* at 14.) In short, Doe 5 argues that Malibu failed "to take appropriate steps to ensure it had a viable claim against [Doe 5]," and that this failure warrants sanctions. (*Id.* at 15.)

Contrary to Doe 5's arguments, there are no bases for sanctions against Malibu. Rule 11 allows a court to impose sanctions on attorneys or parties under certain circumstances, such as where a motion or paper is presented for an improper purpose, such as to harass, or where the claims, defenses, and other legal contentions are frivolous. Fed. R. Civ. P. 11. Rule 45(c)(1) requires a person who issues and serves a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction . . . on a party or attorney who fails to comply." Fed. R. Civ. P. 45(c)(1). As the Court previously explained, the only way for Malibu to protect its copyright is by seeking to identify someone connected to the IP address that allegedly violated its copyright. The November 8 Order granted Malibu leave to "issue appropriate subpoenas to determine the identity of the defendants." (R. 4, Min. Entry.) Malibu has done precisely that. The subpoena asks Comcast to "produce documents identifying the name, address, and telephone number of the defendant John Does" who are identified by their IP addresses. (R. 10-2, Ex. A, Subpoena at 1.) Without this identifying information, Malibu, who has alleged that it is a valid copyright holder, would not be able to pursue litigation or obtain a remedy as it would be unable to serve any defendant with process.

Furthermore, Doe 5 has not presented any evidence that Malibu has engaged in harassing behavior for the Court to consider, nor has the Court observed bad faith behavior or the use of improper tactics on its part thus far. Therefore, as Malibu did not violate the November 8 Order, the Court finds that there are no grounds for sanctions against Malibu under either Rule 11 or Rule 45(c)(1) of the Federal Rules of Civil Procedure. Should Malibu begin to engage in harassing behavior aimed at Doe Defendants after it obtains their identifying information, however, the Court will reconsider whether sanctions may be appropriate at that time.

## VI.    Malibu's Local Rule 3.2 Notice of Affiliates

The Court addresses one final matter before concluding. In its complaint, Malibu alleges that it is "a limited liability company organized and existing under the laws of the State of California." (R. 1, Compl. ¶ 7.) Pursuant to the Northern District of Illinois' Local Rule 3.2, "Any nongovernmental party, other than an individual or sole proprietorship, shall file a statement identifying all its publicly held affiliates. If a non-governmental party has no publicly held affiliates, a statement shall be filed to that effect." L. R. 3.2 (N.D. Ill.). An affiliate, in the case of an LLC, is defined as "any member." *Id.* This statement (i.e., notice of affiliates) must be filed "with the complaint or answer, or upon filing a motion, response, or petition, whichever occurs first." *Id.* Accordingly, because Malibu is a limited liability company, it was required to file a notice of affiliates with the Court at the same time it filed its complaint.

On the same day that Malibu filed its complaint, it filed what it designated a "Notice of Filing Rule 7.1 Disclosure Statement." (R. 3, Not. at 1.) In its notice, Malibu asserts that it "does not have a parent corporation nor a publically held corporation that owns more than 10% of its stock." (*Id.*) Malibu's notice is improper. First, Malibu references the wrong local rule. Local Rule 7.1 pertains to the page limit on briefs. Local Rule 3.2, on the other hand, pertains to

the notice of affiliates. Second, Malibu asserts that it is an LLC. Local Rule 3.2 is clear that in the case of an LLC, an affiliate includes "any member." L. R. 3.2 (N.D. Ill.). Thus, a proper notice of affiliates for an LLC should disclose any member of the company. Malibu has not filed such a proper notice.

Accordingly, Malibu is ordered to file an appropriate notice of affiliates with this Court that identifies its members. The Court cautions Malibu that Local Rule 3.2 also provides that "If any such affiliate is itself a partnership, joint venture, LLC, LLLP, LLP or any other unincorporated association, its affiliates (as defined [by Local Rule 3.2]) shall also be included within the definition of 'affiliate.'" L. R. 3.2 (N.D. Ill.). Thus, if any member is itself a "partnership, joint venture, LLC, LLLP, LLP, or any other unincorporated association," Malibu must also disclose that member's affiliates.

## CONCLUSION

For the reasons stated above, Doe 3's motion (R. 3), Doe 5's motion (R. 10), and Doe 2's motion (R. 14) are DENIED in part and GRANTED in part. The motions are denied except to the extent that Does 2, 3, and 5 seek leave to proceed anonymously through the termination of discovery. Malibu is ordered not to reveal the names or any identifying information of Does 2, 3, and 5. Malibu is further ordered to serve Doe 2, Doe 3, Doe 4, Doe 5, and Doe 6 with summonses and copies of the Complaint in compliance with Rule 4(m) within 30 days from the date of this order. Finally, Malibu is ordered to file a proper notice of affiliates with the Court pursuant to Local Rule 3.2 within seven days of this memorandum opinion and order.

ENTERED: _____

**Judge Ruben Castillo**
**United States District Court**

**Date:** May 17, 2013

35